```
               UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF TEXAS
                  AMARILLO DIVISION


UNITED STATES OF AMERICA,        )
                                 )
                    Plaintiff,   )
                                 )
   VS.                           ) No. 2:21-CR-00046-Z-BR-1
                                 )
GILBERT JOSEPH CARRASCO,         )
                                 )
                    Defendant.   )
_____  )
```

                    PRETRIAL CONFERENCE
          BEFORE THE HONORABLE MATTHEW J. KACSMARYK
             UNITED STATES DISTRICT COURT JUDGE
                      AUGUST 25, 2022
                      AMARILLO, TEXAS

FOR THE PLAINTIFF:

    JOSHUA FRAUSTO
    MATTHEW TUSING
    UNITED STATES ATTORNEY'S OFFICE
    500 Chestnut Street, Suite 601
    Abilene, TX  79602
    (325) 271-6702


FOR THE DEFENDANT:

    W. BROOKS BARFIELD, JR.
    BARFIELD LAW FIRM
    901 S. Polk
    Amarillo, TX  79101
    (806) 48-9500

    Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.
_____

              DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                 Federal Official Court Reporter
                 1100 Commerce Street, 15th Floor
                       Dallas, TX  75242
                       (214) 753-2325

```
1              (PROCEEDINGS BEGAN AT 10:00 AM.)

2              THE COURT:  Please be seated.

3              This is Case 2:21-CR-46-Z-BR-1, United States versus

4    Gilbert Joseph Carrasco, for Pretrial Conference.

5              Are the parties ready to proceed?

6              MR. FRAUSTO:  The United States is present and ready,

7    Your Honor.

8              MR. BARFIELD:  Brooks Barfield for Defendant Gilbert

9    Carrasco; ready to proceed.

10             THE COURT:  And just so the record's clear,

11   Mr. Frausto, if you'll announce the names of the AUSAs

12   participating for the Government, and then I'll ask Mr. Barfield

13   to respond in kind.

14             MR. FRAUSTO:  Joshua Frausto and Matt Tusing.

15             THE COURT:  Okay.  And, Mr. Barfield, for your team?

16             MR. BARFIELD:  Wayne Brooks Barfield, Jr., and my

17   client, Mr. Gilbert Joseph Carrasco.

18             THE COURT:  Okay.  And, Mr. Carrasco, if you'll state

19   your full name for the record to acknowledge your presence today.

20             THE DEFENDANT:  Gilbert Joseph Carrasco.

21             THE COURT:  Mr. Carrasco, you may participate in this

22   Pretrial Conference seated or standing, whatever you find most

23   comfortable, and whatever is consistent with the advice of

24   counsel.

25             So let me give you a brief outline of the conference.
```

1    Sir, we're going to do some housekeeping just so the parties and

2    attorneys understand the Court's general rules for trial.

3         Then for reasons of prior proceedings, I'm going to

4    take up prior psychiatric evaluations and announce the Court's

5    intention on making findings in that regard.

6         We'll then go through witness lists and anticipated

7    order of trial.

8         I am also going to make an admonition to the Defendant

9    on potential double jeopardy issues that arose because of prior

10   proceedings.  I'm prepared to explain the law on that.

11        We'll go through my plan for voir dire.  I know the

12   AUSA in this case and Defense counsel have been in a criminal

13   trial with the Court before, and I just want to provide a

14   refresher on how that works in this courtroom.

15        We'll go through a tentative schedule on timing, the

16   amount of time that I'll anticipate for each side, and then I'll

17   give some instruction on opening statements.

18        And then we'll go through the exhibits one by one and

19   do as much pre-admission as we can.

20        Mr. Frausto, did you bring Case Agents or any agents

21   for purposes of admitting evidence today?

22        MR. FRAUSTO:  Your Honor, I do have the Primary Agent,

23   Chris Brown.  We did not bring the narcotics or the actual

24   firearm to the pretrial hearing.

25        THE COURT:  Understood.  So -- And I know that

4

1    typically like the Custodial Agent will do that work on the day

2    of trial, but you do have the Primary Case Agent for any other

3    photographic evidence or anything else that appears from your

4    exhibit list?

5         MR. FRAUSTO:  I don't have him here, Your Honor.  I

6    could get him if I need him.

7         THE COURT:  Okay.  I'll just instruct you to do that.

8    That won't come until later in the hearing.  So if you can send a

9    text or advise your team to do that.  I'll just ask that they be

10   present so we can pre-admit as much evidence as possible.

11        MR. FRAUSTO:  Yes, Your Honor.

12        THE COURT:  Okay.  So regarding housekeeping, I am not

13   like other judges in other divisions.  We are not going to start

14   at 7:30 or 8:00 or some ungodly early hour.  I am not a morning

15   person, and I don't require that you be a morning person.  So we

16   will begin at 9:00.

17        So every day you should be prepared to start promptly

18   at 9:00.  We'll allow this space to be open and available so that

19   you can set up at counsel table.

20        We start trials on Tuesday to allow for any IT work on

21   the preceding Monday.  So please coordinate with my Courtroom

22   Deputy, Victoria Shrewsbury, if you anticipate using courtroom

23   technology, the screen, any connections.  We've requested that IT

24   Support be available so that you can test your hardware, your

25   laptop, any exhibits, any audio, any video.  I just ask that you

1  coordinate with my Courtroom Deputy, Victoria Shrewsbury.

2        I think both attorneys understand that there's one

3  gatekeeper to this court.  It's not me.  It's my Courtroom

4  Deputy.  And if you make her mad, you will suffer.

5        So I do allow counsel to stand and present from either

6  counsel table or the podium.  Just note your preference for that.

7  I'll allow you to approach.  I'm not terribly formalistic about

8  such things.  And so if you just signal to the Court that you

9  intend to take a witness from the podium or do it from the

10  counsel table, just state your preference.

11        I know because of some of the restraints, sometimes

12  Defense counsel feel bound to counsel table.  So we can do it

13  either way.  Just signal your preference to the Court, and I'll

14  be flexible about that.

15        Counsel may use laptops.  I do warn you that if it's an

16  Apple laptop, that you probably do need to come in Monday and

17  pretest the equipment.  We have connectivity issues with that,

18  but if it's PC based, it should work with all the hardware and

19  material.  Our IT Specialist, TJ Spott, will be here on Monday

20  and you can interact with him to test-drive that laptop.

21        I will ask -- I will order the parties to submit a

22  glossary of terms to the court reporter.  Those are going to be

23  due at close of business today.  So if there are any unusual

24  names, you might imagine with my last name, I'm sensitive to such

25  things.  So if there are any unusual names or serial numbers or

6

1    anything that's case particular that might confuse the court

2    reporter, I just ask that you generate a glossary of terms and

3    that you presubmit those to the court reporter by close of

4    business today.

5         So because of this -- the nature of this case, this

6    might include names of firearms or ammunition or any sort of

7    calibers or things that might be intuitive to you but not

8    necessarily the court reporter or the jury.  So I just ask that

9    you submit those.

10        The e-mail address for the court reporter is

11   mdaniel3549@gmail.com.  And then there is a second e-mail:

12   Mechelle_Daniel@txnd.uscourts.gov.

13        So I just ask that you submit that glossary of terms

14   before close of business today, and I'll instruct the parties to

15   coordinate on that.  And if you need a -- if you need a written

16   version of that e-mail address, you may request that from my

17   Courtroom Deputy at the end of the hearing.

18        So I know that there are prior proceedings.  There was

19   a dismissal of an indictment.  So I want to address both the

20   psych evaluation that related to that and then also any double

21   jeopardy issues that might obtain.

22        So regarding the psychiatric evaluation, 18 USC Section

23   4241(a) permits the Defendant or the Government to file a motion

24   for a hearing to determine the mental competency of the Defendant

25   to stand trial.  It also permits the Court to order such a

7

1    hearing on its own motion.  No such motion has been filed in this

2    case, but the purpose of a pretrial hearing is to expedite

3    matters and to avoid wasteful pretrial activities under Rule

4    16(a).

5              The Court is aware that there was a previous

6    indictment, and Mr. Carrasco received a psychological evaluation

7    by Dr. Robin Watkins which was filed with this Court on April 16,

8    2021.  In that evaluation, Dr. Watkins found that Defendant was

9    competent to stand trial.

10              And for efficiency purposes, do the Government and

11    Defense attorneys here stipulate to the findings of that

12    evaluation report?

13              MR. FRAUSTO:  Your Honor, we do or the Government does.

14    And we offer Government's Exhibit A which is the psychological

15    evaluation showing that the Defendant was found to be competent

16    in Case No. 2:20-CR-38-Z.  And so we'd offer that; that be

17    admitted under seal.

18              THE COURT:  Okay.  Mr. Barfield, any objections to the

19    admission of that psychiatric report in support of the Court's

20    necessary finding on competence to stand trial?

21              MR. BARFIELD:  No objection to that being admitted and

22    filed under seal, Your Honor.

23              THE COURT:  Okay.  And by executing and agreeing to the

24    admission of that report and that it's relevant to competency

25    only, do you waive any and all objections to confront and

1   cross-examine Dr. Robin Watkins, the author of that psychiatric

2   report?

3           MR. BARFIELD:  I do, Your Honor.

4           And just briefly for the record, I'm basing that not

5   only on the qualifications that I saw.  I have reviewed the

6   report.  I received it, gosh, a couple of months ago when I first

7   was assigned to this case and reviewed it then.  And then again

8   based upon my dealings with Mr. Carrasco, I don't have any

9   objections to the doctor's findings or the report.  And

10  Mr. Carrasco has been able to effectively assist me in his

11  defense as well.  And so I just wanted to get that stated on the

12  record as well.

13          THE COURT:  Okay.  So here the Government is in receipt

14  of what has been marked as Government Exhibit A.  It's a cover

15  letter from the Office of the Warden, dated April 13, 2021.  That

16  is followed by a forensic evaluation which is then signed by the

17  psychiatric physician, Robin Watkins, Ph.D.  That is admitted for

18  purposes of this case and will be kept under seal at all times.

19  This is without prejudice to any other affirmative defenses that

20  remain under the statute or under the rules.

21          The Court will make its own inquiry as to competency to

22  stand trial.  I'll begin with a series of questions.  I'll ask it

23  both of the AUSA and then of Defense counsel here.

24          Does the Government have any reasonable cause to

25  believe that the Defendant may presently be suffering from a

1    mental disease or defect rendering him mentally incompetent to

2    the extent that he is unable to understand the nature and

3    consequence of the proceeding against him or to assist properly

4    in his defense?

5            MR. FRAUSTO:  No, Your Honor.

6            THE COURT:  And, Mr. Barfield, based on your

7    representation of Defendant and your interactions with him, I

8    know you're already on the record about some of that.  Do you

9    have any reasonable cause to believe that the Defendant may

10   presently be suffering from a mental disease or defect rendering

11   him mentally incompetent to the extent that he's unable to

12   understand the nature and consequences of the proceedings against

13   him or to assist properly in his defense?

14           MR. BARFIELD:  I -- I do not, Your Honor.

15           THE COURT:  The Court, having considered the record and

16   the parties' presentation and the Court's own observation of the

17   Defendant and his interaction with counsel and this Court, finds

18   by a preponderance of the evidence that the Defendant is not

19   presently suffering from a mental disease or defect rendering him

20   unable to understand the nature and consequences of this

21   proceeding against him or to assist in his defense.

22   Consequently, the Court expressly finds that the Defendant is

23   mentally competent to stand trial and will enter a written order

24   to that effect.

25           Now typically, were this a competency hearing alone,

1   under 18 USC Section 4241(f), this finding would be followed by a

2   statement by the Court that a finding of competence to stand

3   trial does not prejudice the Defendant in raising the issue of

4   his insanity as a defense to the offense charged.  However, Rule

5   12.2(a) states expressly, "A defendant who intends to assert a

6   defense of insanity at the time of the alleged offense must so

7   notify an attorney for the Government in writing within the time

8   provided for filing a pretrial motion.  A defendant who fails to

9   do so cannot rely on an insanity defense."

10          Here, that period for pretrial motions has expired, and

11  Defendant's deadline to notice an affirmative defense of insanity

12  has passed and is, therefore, deemed waived.  The Court will

13  issue a written order reflecting the findings in these

14  proceedings.

15          So here, those deadlines for noting affirmative

16  defenses relevant to insanity or other mental defect have passed

17  and, therefore, those -- those defenses are now waived, and they

18  may not be used as part of the defense.

19          Do you understand the nature of the Court's finding and

20  ruling on that, Mr. Barfield?

21          MR. BARFIELD:  I do, Your Honor.

22          And I'd like to just, again, for the completeness of

23  the record, make a statement that I understand those are waived.

24  And the reason those defenses were not filed by Pretrial is I

25  believe any motion in that regard, given the competence of the

1    examination and my interaction with my client, would have been

2    frivolous motions, and -- and they would have been frivolous and

3    of no merit, and I do not file frivolous motions.

4         THE COURT:  And any further -- Does the Government seek

5    any further finding or ruling regarding any affirmative defenses

6    that should have been noticed before this day?

7         MR. FRAUSTO:  No, Your Honor.

8         THE COURT:  Okay.  Now regarding double jeopardy, I

9    know, because there were prior proceedings, there may be

10   confusion about the nature of double jeopardy and when it

11   attaches.  So the Court will enter its own analysis and finding

12   regarding that.

13        Mr. Carrasco, I want to make clear to you:  While your

14   new Indictment under the Constitution and precedent of the

15   relevant governing jurisdictions does not subject you to double

16   jeopardy as prohibited by the Fifth Amendment to the

17   Constitution, the Fifth Amendment's double jeopardy clause

18   states, quote, "No person shall be subject for the same offense

19   to be twice put in jeopardy of life or limb."  This clause

20   protects against, No. 1, a second prosecution for the same

21   offense after an acquittal; No. 2, a second prosecution for the

22   same offense after a conviction; and No. 3, multiple punishments

23   for the same offense.

24        I am quoting directly from *Ohio versus Johnson*, a

25   Supreme Court case from 1984.  That case may be found at 467 U.S.

1    493, Pinpoint 498.

2    "The double jeopardy clause bars a second prosecution

3    for the same offense only if attached in the original

4    proceeding."  I should say "only if jeopardy attached."  I am

5    referring here to *Serfass versus United States*, S-R -- I'm

6    sorry -- S-E-R-F-A-S-S.  That is a Supreme Court case from 1975.

7    It may be found at 420 U.S. 377.

8    So the critical question in these inquiries is when

9    jeopardy attached.

10    In a bench trial jeopardy attaches when the judge

11    begins to hear evidence.  Here, the Court is guided by Fifth

12    Circuit precedent from 1978, *United States versus Pitts*.  In

13    contrast, in a jury trial, jeopardy attaches when the jury is

14    impaneled and sworn.  And here the Court is guided by a Fifth

15    Circuit case from 2017, *Montano versus Texas*, 867 F3d 540.  As

16    applied here, the Court dismissed without prejudice the original

17    Indictment in Case No. 2:20-CR-38-Z-BR.  That's reflected in

18    Sealed Document ECF No. 72.  And on January 24, 2021, the

19    Government issued another Indictment charging you with three

20    counts.

21    Because no judge was ever presented evidence in a bench

22    trial, nor was a jury impaneled and sworn in a jury trial,

23    jeopardy never attached to any of the charges found in the first

24    Indictment.

25    The Fifth Circuit, which governs this Court, has

1   repeatedly stated that if the original prosecution did not reach

2   either of these stages, jeopardy has not yet attached and there

3   is no double jeopardy violation.

4          That is a direct quote from *United States versus*

5   *Garcia*, 589 F2d 249.  It is also citing within that case

6   *United States versus Jasso*, 442 F2d 1054.  Both of these cases

7   explain that there is no double jeopardy attachment where a

8   defendant was reindicted after the Government confessed error and

9   moved to vacate the original conviction and remand for new trial.

10          Now, Mr. Barfield, do you have any questions about the

11  Court's analysis or any additional explanation that might benefit

12  Defendant's understanding of "double jeopardy," how it attaches

13  and its constitutional rights?

14          MR. BARFIELD:  No, Your Honor.  And I believe that's

15  pretty much what I've explained to my client previous to today's

16  hearing.

17          THE COURT:  Okay.  Anything further from the Government

18  so that we may clear the air of any concerns about prior

19  proceedings, prior indictments and whether double jeopardy

20  attaches and the constitutional principles that apply?

21          MR. FRAUSTO:  Your Honor, I know -- I didn't hear the

22  date that you provided that we indicted.  I just want to make it

23  clear on the record that in Case No. 2:20-CR-38-Z, that was

24  dismissed on May 20th, 2021.  The Government immediately the

25  following month, June 24th, 2021, reindicted the case after it

1    was dismissed without prejudice.

2          THE COURT:  Thank you for that record clarification.

3    You are correct.  I lists -- listed and referenced the original

4    Indictment but not the date, and you are correct on the date for

5    the original Indictment and then the one that followed on January

6    24, 2021.  So thank you for that.  The Court agrees with your

7    recitation of the procedural ---

8          MR. FRAUSTO:  Your Honor, you said January.  It's June

9    24, 2021.

10          THE COURT:  Oh.

11          MR. FRAUSTO:  That's what I wanted to clear up.  I'm

12    sorry.

13          THE COURT:  That's right.  That is my mistake, not

14    yours.  June 24, 2021, let the record so reflect.

15          Okay.  So with that understanding, we'll now go into a

16    more traditional Pretrial Conference, but I did want everybody to

17    make whatever appellate record they needed because of these prior

18    proceedings and psychiatric evaluations that preceded this trial.

19          Okay.  So regarding voir dire, I know that we have at

20    least one new AUSA in the room, but Mr. Barfield and Mr. Frausto

21    understand that the Court takes the lead in most of the voir dire

22    questions.  So those should have been presubmitted to the Court.

23    If there are any particular questions that you want from the

24    bench, I know I have at least one set from the Government.  After

25    the Court goes through those prewritten questions and those

1    standard questions, I will afford 20 minutes per side for counsel

2    to voir dire the panel.

3          Now I think both attorneys, Defense counsel and AUSA,

4    understand that I don't appreciate theatrics or trying your case

5    to the voir dire panel.  So let's limit the questions to this

6    sort that deal with venire persons' qualifications to search, not

7    a preview of the case, your closing, your opening, or any of that

8    but, instead, let's just focus on qualification to serve as

9    jurors.  Bolstering will not be allowed.

10          I anticipate that this will be the first venire panel

11    set for this courtroom in the post-COVID era.  I know we were

12    doing that upstairs for reasons of social distancing.  I don't

13    think that will be necessary for this case or this venire panel.

14    So we will do the voir dire work in this court space.  So you

15    should anticipate that voir dire will take place with venire

16    persons seated in the seats behind you.  You may reorient counsel

17    table to face them for that part of the trial.

18          I anticipate that we will have roughly 100 venire

19    persons assembled.  They will be numbered left to right.  They

20    will be identified only by numbers, at least as -- as to the

21    seating system.  There will be a cordless microphone and two

22    court staff personnel on either side.  You may hear me during

23    voir dire refer to "left" and "right."  That's with reference to

24    my perspective.  So we'll start with Venire Person No. 1.  We'll

25    run that column and then every row after that.

1          So as we're interacting with venire persons, they'll

2    raise a placard with their number.  I'll identify them by number,

3    and we'll interact that way.  When it's your turn, if there's any

4    follow-up questions, you'll also rely on court staff for the

5    questioning.  So I just ask that you wait for the microphone so

6    that the record is clear on that.

7          MR. FRAUSTO:  Here, Your Honor, --

8          THE COURT:  Yes.

9          MR. FRAUSTO:  -- will we have a podium here to face

10   that direction?

11         THE COURT:  Yes.  Yeah.  We'll -- Well -- So we can set

12   up the podium but it won't be mic'd.  So in this courtroom, just

13   because of the way they wired it, that central podium cannot be

14   reoriented.  But what we've done in the past is bring in a

15   separate stand-alone podium without a microphone to that central

16   position.  If you want to use the microphone at counsel table, we

17   can turn the chairs around for that.

18         MR. FRAUSTO:  Or the handheld for the coat possibly?

19         THE COURT:  Yeah.  Okay.  That's also an option, too.

20   This courtroom was rewired when I started, and so they sort of

21   fixed that podium to direct it this way.  So, yes, we can have

22   the wiring -- the lapel microphone.  So if you want to do that by

23   the podium, we can do it that way.

24         MR. FRAUSTO:  Okay.

25         THE COURT:  Mr. Frausto, do you request that set-up?

1        MR. FRAUSTO:  Yes, Your Honor.

2        THE COURT:  And is that the set-up that you request,

3   Mr. Barfield?

4        MR. BARFIELD:  Absolutely, Your Honor.

5        THE COURT:  Okay.  So we'll set it up that way,

6   anticipating that you'll be mic'd by lapel, and you can direct

7   your questions from that podium.

8        (Pause)

9        So my ever-vigilant Courtroom Deputy has reminded me

10  that we mailed 100 -- we mailed to 100 venire persons but we

11  anticipate something like 50 showing up after all the

12  questionnaires have cleared and any disqualifications in response

13  to those questions are accounted for.  So when you arrive, it

14  will probably be something like Venire Person 1 through 50, even

15  though we sent out 100 questionnaires and summons.

16       Okay.  Here we're guided by Criminal Rule No. 24(b).

17  So we have a strike range count of 32, 10 plus 1 for the

18  Defendant, 6 plus 1 for the Government.  I will instruct counsel

19  as you're calculating strike range, you should account for two

20  alternates, one per side.  That accounts for the extras in -- in

21  that 32 strike range.

22       So you know my intentions -- Mr. Frausto is familiar

23  with this; Mr. Barfield is -- we'll go through just the standard

24  juror qualifications to serve.  We have a separate COVID

25  questionnaire.  We're still under Special Order No. 13-9 in the

1    Northern District of Texas, so we have to do a little bit of that

2    COVID clearance.

3         We'll go through reasons for excuse from service.  I'll

4    ask a series of questions, orienting the venire panel around

5    criminal law fundamentals.  I'll explain "beyond a reasonable

6    doubt," some of the different concepts that are unique to

7    criminal law versus civil law.

8         I'll introduce each of you as counsel to the case.

9    I'll ask you to introduce any Case Agent that's seated at your

10   table and, of course, your clients.

11        And then after I run through the Court's questions, we

12   will allow 20 minutes per side from the parties.

13        So regarding strikes, we'll take it up in this order

14   and rehabilitation, if necessary.  So first, we'll take up just

15   the hardship questions and answers and any responses thereto.

16        I'll advise any attorneys new to the division that we

17   often have great distances involved in this division.  So you may

18   have venire persons who have traveled from Texline or Dalhart or

19   places like that based on the agri-business of this area.

20   Sometimes people are just not available to serve.

21        So I will try to rehabilitate, you know, standard

22   questions to ensure that people don't use that as an excuse, but

23   you may have actual hardship cases based on some of the logistics

24   of the division.

25        After we take those up, we'll take up "for cause"

1    strikes.  We'll excuse the venire panel to the Jury Assembly Room

2    and we'll take those up one by one in sequence.

3          So please indicate any persons that, you know, should

4    be identified as a potential "cause" strike and whether you think

5    questioning by the Court or counsel can rehabilitate.  We'll do

6    those one by one.  And the remainder of the venire panel at all

7    times will be separate in the Jury Assembly Room.

8          After we adjudicate all "cause" strikes, we will

9    solicit from the parties lists of preemptory strikes.  It's my

10   Courtroom Deputy and the Deputy Clerk, Delynda Smith, who

11   reconcile those.  We're essentially adjourned for 10 to 15

12   minutes while the parties prepare those, coordinate closely with

13   the CRD and the Deputy Clerk.  When that part is done, you'll

14   return your strike list to the District Court, and then we'll

15   take up any *Batson* motions, anything relevant to the exercise of

16   strikes preemptory or otherwise.  We'll do all of those motions,

17   and then I think we'll have a jury at that point.  So at that

18   point we'll be ready to seat the jury.

19         Now that gets us up to the point of impanelment.

20         Now I do want to open up this Pretrial Conference for

21   the adjudication of any untimely motions or any timely motions

22   that are pending.  I know -- I think we have a motion *in limine*.

23   You can anticipate an order *in limine* on that.

24         Are there any motions that should be adjudicated at

25   this conference so that we're ready to begin trial on Tuesday?

1    From the Government?

2         Understanding -- Understanding that there is a

3    timely-filed motion *in limine*.

4         MR. FRAUSTO:  If we could just go back to the voir dire

5    real quick, I just wanted to confirm that we will be getting a

6    seating chart from the Clerks Office.

7         THE COURT:  Yes, you will.  And you will get -- On the

8    day of trial, you'll get a list of names and the standard form

9    listing occupation and residence.  You'll also get a very loose

10   listing of the persons who are appearing in the venire panel.  It

11   may not resemble the sort of charting that I have here, but

12   you'll at least have the names and numbers.

13        MR. FRAUSTO:  And then the second thing:  As far as the

14   trial goes, the Government usually has the Case Agent and the

15   AUSAs participating.  We will actually have Cynthia Hindron, our

16   administrative assistant, participate in this case.  We're trying

17   new technology on our laptop to present the exhibits.  So she'll

18   be here for that purpose.

19        THE COURT:  Okay.  She's permitted to sit at counsel

20   table, operate the machinery.

21        Mr. Barfield, if there's anybody from your office,

22   paralegal or otherwise, you may bring that personnel.  I just ask

23   that you signal to the Court that you have a member of your team

24   who's responsible for IT and exhibits and the things like that.

25        Do you anticipate bringing any such person?

21

1              MR. BARFIELD:  I could bring my legal assistant,

2    Melissa Johnson, potentially.

3              THE COURT:  Okay.

4              MR. BARFIELD:  But that would be the only other

5    individual.

6              THE COURT:  Okay.  Just given the -- given the

7    constraints of the space, just make sure that you arrive in time

8    to re-order exhibit binders and technology and all that.  That's

9    really what Monday is for, so make use of that time.  We're going

10   to have the IT Specialist on point here in this courtroom.  We'll

11   unlock this space, and you can sort of figure out the spacing and

12   everything.  And you can also have your administrative assistant

13   present to orient her or him to that space.  So, yes, they're

14   allowed to sit with counsel.

15             MR. FRAUSTO:  As far as motions, pending motions, other

16   than the Government's motion *in limine* and the Defense's motion

17   *in limine*, those are the only two motions that we have that need

18   to be ruled on.  You know, we can discuss those.

19             But in addition to that matter, at the appropriate time

20   I'd like to bring up the plea offer that was extended to the

21   Defendant and the fact that he declined it.

22             THE COURT:  Okay.  So let's do first the stipulation

23   regarding prior felon status.

24             So the Court anticipated that the Government would move

25   to admit and use premarked Exhibits 1, 2 and 3 to prove its case

1   and its —— to bear its burden of proving that Defendant was a

2   felon and that he knew he was a felon.

3          I do want to explain to the Defendant:  Some of this

4   litigation is a result of a recent Supreme Court case, *Rehaif* ——

5   R-E-H-A-I-F —— where the Court held that in prosecutions of this

6   type, the Government must not only prove your knowing possession

7   of a firearm but also that you knew you were a felon.  And so

8   when that is an issue, the Government is allowed to present

9   records of conviction and felon status for purpose of proving

10  that element of the offense.

11         Here, the Government had in its proposed binder of

12  exhibits Exhibits 1, 2 and 3 which are judgments reflecting your

13  prior convictions.  For obvious reasons, these are not typically

14  allowed as exhibits, but where felon status is —— is contested,

15  and consistent with the Supreme Court's guidance in *Rehaif*, these

16  exhibits are generally admissible to prove felon status.

17         So, Mr. Barfield, do you have in your possession

18  Government Exhibits 1, 2 and 3?

19         MR. BARFIELD:  I do, Your Honor.

20         THE COURT:  Okay.  So let's take those up now.  It's my

21  understanding the parties have reached agreement on a stipulation

22  that may obviate the need for Government's Exhibits 1, 2 and 3.

23         I'll allow you, Mr. Frausto, to begin.

24         MR. FRAUSTO:  Your Honor, we did receive the signed

25  stipulation yesterday afternoon, and it's my understanding that

1  this will be entered as Government's Exhibit 66.  This

2  stipulation, the Defendant is stipulating that he was, prior to

3  April 28th of 2020, a convicted felon and that he knew of that

4  status.  So that will alleviate the Government entering

5  Government's Exhibits 1 through 3 which are the judgments.  In

6  addition, Government's Exhibit 4.  We do not intend to admit them

7  at this point unless it becomes relevant pursuant to Rule 609.

8  And if the Defendant so chooses to testify, we may utilize those

9  judgments for impeachment purposes.

10         THE COURT:  Understood.

11         And, Mr. Barfield, I'll allow you now to respond in

12  kind with your understanding of the stipulation and your client's

13  assent to that stipulation, specifically the ones reflecting that

14  he knew he had been convicted of a crime punishable by

15  imprisonment of a term in excess of one year.  That is a felony

16  offense.

17         MR. BARFIELD:  Yes, Your Honor.  We did execute the

18  stipulation yesterday afternoon.  I met with my client.  There's

19  no -- no question, after reviewing the Government's exhibits,

20  that that did occur.  In regards to that, we have made the

21  determination, one, because it's factually correct, to execute

22  the stipulations and, two, both for my client's benefit and for

23  the expediency of trial, we agreed to the stipulation and do so

24  stipulate at this time.

25         THE COURT:  Okay.  So the Court hereby admits into

1    evidence the stipulation marked as Government Exhibit 66.  I'll

2    allow this to be presented through an agent at trial and then

3    also published and submitted to the jury.

4         And I do want to make findings regarding -- I do want

5    to preview the Court's anticipated findings and analysis of

6    Government's Exhibits 1 through 4, should they be at issue.

7         If Defendant can -- renews any objection to his

8    knowledge of felon status, I anticipate that Exhibits 1 through 4

9    are admissible under the Rules of Evidence, specifically as -- as

10   relevant to the *mens rea* knowledge requirement that the

11   Government bears as a burden in this case.  I think for those

12   reasons, the probative value significantly outweighs the risk of

13   prejudice.  The Supreme Court has instructed that knowledge of

14   felon status is now elemental to this prosecution, so the

15   Government is responding in kind with that evidence.  Were they

16   to present that also on any authentication grounds, the Court's

17   found that they are generally admissible under Rule 901(b)(7).

18   And if Defendant contests on the witness stand his knowledge of

19   felon status, then I anticipate they would be admissible under

20   Rule 609 as impeachment evidence.

21        Now you can anticipate if that happens at trial, we may

22   need to remove the jury for adjudication of any redactions to

23   those exhibits.  So historically where we have gun counts

24   involved and *Rehaif* applies, I have instructed the parties to

25   redact judgments of conviction to remove any hint of prejudice

1    before they're presented to the jury.

2         Mr. Frausto, I just ask that you be prepared to argue

3    for or against redaction and then, Mr. Barfield, you in turn.  So

4    we can do some of that now or at trial if it becomes an issue.

5         MR. FRAUSTO:  I think we can wait till trial in case it

6    becomes an issue.  At this point I don't -- we don't anticipate

7    entering them into evidence pursuant to now the stipulation.

8         In addition to those four exhibits, Your Honor, I

9    wanted to note that in Government's Exhibit 57, the Defendant --

10   I mean the Government intended to admit a transcript of an audio

11   clip of Government's Exhibit 55.  So that clip and that

12   transcript specifically, the Defendant admitted to going to

13   prison before for a domestic violence conviction.  We don't

14   anticipate entering that since we now have the stipulation.

15        Government's Exhibit 55 does have an audio clip in

16   there in Clip 2.  We will not play that at trial, assuming that

17   the stipulation occurs and it's not relevant.

18        THE COURT:  Okay.  So let's take those up in turn.

19        Oh, just quickly on redaction.  So should it become an

20   issue, if knowledge is contested as an element of defense, we'll

21   quickly remove the jury.  I'll instruct the parties to make

22   arguments on redaction.  I think it would behoove both the AUSA

23   and Defense counsel to agree to any preredaction if they think

24   this is going to be an issue as we move closer and closer to the

25   trial date.

1          I believe, Mr. Barfield, you've had some experience

2     with this issue in prior cases where we've redacted judgments.

3          Mr. Frausto, members of your team have done that as

4     well.

5          It would move the trial along if things were

6     preredacted, and I'm inclined to follow the pattern that we've

7     used in other 922(g) and the 924(c) cases.  So both -- both sides

8     are familiar with those -- those prior cases.  I tend to follow

9     that redaction model.  So if you do think this is going to be an

10    issue, I just ask that you arrive with pre-agreed redactions, if

11    that's possible.  Otherwise, we'll just take it up line by line.

12    It will add some delay, but I tend to redact judgments in these

13    *Rehaif* kind of scenarios.  So just -- You might want to prepare

14    for that if you think we're approaching that decision point.

15         Now to Exhibit 57, here there is a reference to

16    "prison" in the excerpt, in the transcript.  It's the

17    Government's intention not to elicit ---

18         MR. FRAUSTO:  We're not going to admit that exhibit,

19    Your Honor, pursuant to the stipulation.

20         THE COURT:  Okay.  So you think the stipulation

21    obviates the need for that.  Okay.  So 57 is out.  And then I

22    believe you mentioned 55.

23         MR. FRAUSTO:  55, it has ten audio clips, and the

24    second audio clip is essentially that statement that the

25    Defendant had been to prison before for what he refers to as a

1    domestic violence conviction.

2         THE COURT:  Okay.  So I'm assuming Defense counsel has

3    no objections to the Government's new treatment of Exhibits 57

4    and 55.

5         MR. BARFIELD:  Your Honor, absolutely not.  And, again,

6    I don't not -- Based -- I mean, obviously, we signed the

7    stipulation.  Obviously, if it becomes an issues, we'll -- we'll

8    handle the redaction just so the Court knows.  But, yes, sir, I

9    am perfectly fine with the Government's announcement.

10        MR. FRAUSTO:  And just so it's clear on the record, we

11   do not intend to offer Exhibit 57.  As far as Government's

12   Exhibit 55, we will admit that disk, but we will not play or

13   publish the second audio clip.

14        THE COURT:  So let me do -- let me do this because

15   audio clips and excerpts get problematic when submitted to the

16   jury.

17        The attorneys can operate in good faith not to play

18   clips by agreement or agreement with the Court, but once the disk

19   goes to the jury, we lose control of that discipline.  I wouldn't

20   want the jury to play the second audio clip if we all agree it

21   shouldn't be submitted into evidence.  I'll instruct the

22   Government to resubmit Exhibit 55.  We'll call this Exhibit 55-A

23   to include all but the second audio clip.

24        And starting on Tuesday, I'll allow the Government to

25   move for admission of Government Exhibit 55-A based on the

1    assertions of both the AUSA and Defense counsel that that second

2    audio clip should not be played.  And then that way we don't have

3    any questions about inadvertent recordings being played to the

4    jury that we agreed should be out of the evidence.

5         Is the Government amenable to that plan?

6         MR. FRAUSTO:  Yes, Your Honor.  We could easily just

7    put in the nine clips, take out that second clip.

8         THE COURT:  Okay.  I just ask that you provide a copy

9    to Mr. Barfield so he can confirm that the audio clip has been

10   deleted.

11        As an AUSA, I had cases with FISA overhears, and all

12   men are fighting about which excerpts were in, which excerpts

13   were out, which ones were going to the jury.  So I just prefer to

14   preclear everything before we get to that point in trial.

15        So let's do that now and over the weekend so that

16   Government's Exhibit 55-A omits that second audio clip.  Then it

17   can be admitted without incident.

18        All right.  So on the order *in limine*, you can expect

19   that today or tomorrow, and that will reflect the Court's ruling

20   on the Government's motion *in limine*.

21        Mr. Barfield, it was my under -- it's my understanding

22   that you do not have a matching pending motion *in limine*.  Is

23   that correct?

24        MR. BARFIELD:  I believe we did file a motion *in limine*

25   as Document 37.

1          THE COURT:  Okay.  Let me pull that up.

2          MR. BARFIELD:  And while you're doing that, Your Honor,

3    it is a -- a -- We actually dealt with a lot of my motion *in*

4    *limine* in the Court's previous discussions.  It's -- It's a

5    standard -- It's a standard motion *in limine* for prior wrongs,

6    acts, bad conduct during the guilt/innocence phase of the trial.

7    Obviously, we've already dealt with the elemental issues involved

8    in being a previous felon which would be -- which, obviously,

9    would be encompassed in the motion *in limine*.  However, if it's

10   elemental, I think we've done the stipulation.  So that's not an

11   issue at this point.

12         Any other wrongs, bad acts or anything like that, I'm

13   just asking that before any -- the Government tries to introduce

14   any evidence that is not elemental, that's another prior bad act,

15   prior conviction for elemental purposes, that at a minimum we

16   have a -- a -- outside the presence of the jury a conference to

17   make the determination of the probative value based upon -- as

18   opposed to the prejudicial effects.  And that's essentially all

19   I'm asking in my motion *in limine*, Judge.

20         THE COURT:  Okay, understood.  Yeah, and I have a copy

21   of Defendant's motion *in limine*.  I apologize that I lost track

22   of that.  It is timely filed, and the Court will address that in

23   the order *in limine* that addresses both the Government's pending

24   motion and Defendant's.  I hope you know by now we're, what,

25   three years into this job.  I am an "ask for permission" judge,

 1    not a "beg for forgiveness" judge.

 2              MR. BARFIELD:  Yes, sir.

 3              THE COURT:  As you might understand from my appellate

 4    background, I don't tolerate trial antics, gamesmanship,

 5    showmanship or any of that where you blurt out something and then

 6    beg for forgiveness.  Orders *in limine* are designed to

 7    prelitigate, get the rules of the road so that we can proceed in

 8    an orderly way.  So ask for permission.  Don't beg for

 9    forgiveness.  That's what the order *in limine* is for.  That will

10    be forthcoming either today or tomorrow.  So I'll rule on both,

11    and you'll get the rules of the road for that in written form.

12              MR. FRAUSTO:  Your Honor, as far as the Defense's

13    motion *in limine*, the Defense is in agreement that this pertains

14    to prior convictions.  I understand prior bad acts, but we

15    discussed this, and I just want to make it clear that both sides

16    agree not to get into the specifics of the prior convictions.

17              However, the text messages, which are in the

18    Government's exhibit notebook and Defense's exhibit notebook, are

19    relevant to Count One of the Indictment, so -- and the statements

20    about -- the Defendant makes which are listed in several of our

21    exhibits.  We believe those are not prior bad acts.  They're

22    intrinsic, and I think the Defense agrees to that extent.  So we

23    don't anticipate ---

24              THE COURT:  We're going to take up each exhibit one by

25    one --

1          MR. FRAUSTO:  Okay.

2          THE COURT:  -- at the conference today.  So I agree

3    that's potentially implicated by the order *in limine*, but you'll

4    have a separate ruling from this Court exhibit by exhibit.

5          I tend to agree with the Government, but I'll hear any

6    additional argument of Defense counsel.  But, yes, those are

7    different than the sort of prior bad acts evidence that are

8    covered by other rules.

9          MR. FRAUSTO:  Okay.

10          THE COURT:  So we'll take up those text messages.  I

11    know -- I think there's an exhibit range of about four or five

12    where there are screenshots of text messages.  We'll take those

13    up one by one today at the hearing.

14          Okay.  So before we get deep into exhibits, let's just

15    talk again at a high level about the tentative schedule.

16          I anticipate that the Government's case combined with

17    the Defendant's case will last no longer than eight hours.  One

18    reason I am so tight on time in this courtroom is because of the

19    distances involved.  We have jurors that are traveling from all

20    over the panhandle, and I try to be very sensitive to the stress

21    on the jurors.  So I just ask that the parties be efficient.

22          I'm anticipating this case can be done in eight hours.

23    Day One involving voir dire, opening statements and the

24    Government opening its case, followed by Day 2, if necessary,

25    Defendant opening his case and this followed by a close of

1    evidence, closing statements, jury charge and deliberation.  So

2    to the extent this things bleed into a third day would be only

3    for deliberations, and I just have instructions about counsel

4    remaining close and available should we have jury deliberations

5    take longer than that.

6            I do follow the Reed O'Connor rule of holding people

7    late, if necessary, to complete a line of inquiry or keep a

8    witness on the stand who may then be excused the next day.  I

9    know people have children in school and things like that.  I'll

10   be sensitive to those restraints, but we will work late into the

11   evening, if necessary, to get this case done and the jury back

12   home just because of the logistics of this division.  It's very

13   hard for jurors to serve when they are running a farm in Texline

14   or Dalhart or places like that.  So I put the burden on the Court

15   and counsel to be efficient and, if necessary, to work late.  So

16   please adjust your plans accordingly.

17           And when we get into opening statements, I intend to do

18   that immediately after we impanel the jury.

19           Is there any estimates on time that I need to plan for

20   opening statements?  From the Government?

21           MR. FRAUSTO:  I think 15 minutes at most, Your Honor.

22           THE COURT:  Okay.  And from the Defendant?

23           MR. BARFIELD:  That would be sufficient, Your Honor.

24           THE COURT:  And it's your prerogative to follow the

25   Government with your opening statement or reserve that for your

1    case-in-chief.  Do you -- Do you know your preference yet?

2              MR. BARFIELD:  Typically, I listen to what the

3    Government says, Your Honor, and then I make my decision at that

4    time.

5              THE COURT:  It's your prerogative.  You're Defense

6    counsel.  Just signal to the Court if I need to make a pause so

7    that you can begin your opening statements.

8              MR. BARFIELD:  Yes, sir.

9              THE COURT:  Okay.  So I anticipate the following

10   witness order by the Government who, obviously, begins this case:

11             An expert in the form of APT -- I'm sorry -- APD

12   Narcotic Agent Cesar Huerta.

13             Next Deputy Marshal Matthew Clay.

14             Next, an expert crime scene investigator, Edward Thomas

15   Carroll, IV.

16             Next, an expert in the form of ATF Special Agent Bailee

17   Yates.

18             Next, an expert in the form of APD Officer Randy

19   Mincher.

20             Next, an expert in the form of DEA Senior Forensic

21   Chemist, Denise Williams.  And to be clear, this is not the

22   former AUSA Denise Williams.

23             Is that correct, Mr. Frausto?

24             MR. FRAUSTO:  That's correct, Your Honor.

25             THE COURT:  I saw the name and I had a flashback, so.

1     This is actually a DEA Senior Forensic Chemist, not the former

2     AUSA who ran the Lubbock division for many years.

3                    MR. FRAUSTO:  That's correct, Your Honor.

4                    THE COURT:  Okay.  Thank you for that clarification.

5                    This to be followed by APD Corporal Bryan Bacon.

6                    Next, APD Officer Eric Skaggs.

7                    Next, APD Corporal Royce Bushey.

8                    Next, APD Officer Nick Burns.

9                    Next, APD Agent Kristopher Koval.

10                   Next, APD Agent Cole Thurman.

11                   And then regarding any custodial witnesses and the

12    introduction of the guns and drugs, what's your plan on that?

13                   I know things have to be in lockers and the rest.

14                   What's your plan on introducing the physical evidence

15    of guns and drugs?

16                   MR. FRAUSTO:  Your Honor, the -- Agent Brown's going to

17    be here.  He'll be the custodian of it and will enter it, and

18    he'll take it after each day of trial to make sure it's locked up

19    and bring it back for trial.

20                   THE COURT:  Okay.  And Agent Brown is allowed,

21    obviously, to sit with the Government.  He may be seated where he

22    is today as part of that process.  Just because of the

23    sensitivity to guns and drugs, I just ask until they're relevant

24    to witness testimony, that they be kept near the Government's

25    table.  But once they're in evidence, we can make arrangements to

 1    have them displayed when it's relevant to witness testimony.

 2              So if you need tables or anything like that, let us

 3    know.

 4              MR. FRAUSTO:  We will need just a small table,

 5    Your Honor.

 6              THE COURT:  Okay.  I'll instruct my clerks and court

 7    staff to have that prepared for the guns and drugs that will be

 8    part of this case.

 9              MR. FRAUSTO:  And, Your Honor, you went through that

10    witness list.  If you prefer, I could give you our specific order

11    that I anticipate and the witnesses we've cut out due to the

12    stipulation.

13              THE COURT:  Okay.  So let's do that, and that will help

14    all involved plan for Day 1 and Day 2, if necessary.

15              So I'm turning now to Government's Exhibit List,

16    Document No. 33.

17              Mr. Barfield, do you have a copy?

18              MR. BARFIELD:  I do, Your Honor.

19              THE COURT:  Okay.  This will help everybody plan.

20              MR. FRAUSTO:  33 or 34, Your Honor?

21              THE COURT:  Oh, this is the exhibit list.  I'm sorry.

22    Witness List is, I think, the prior document, yeah, or the next

23    document.  Government's Witness List, Document No. 34.

24              MR. FRAUSTO:  So pursuant to the stipulation at this

25    time, the Government will just have on standby Matthew Clay and

1    Edward Thomas Carroll, but we don't anticipate calling those two

2    individuals because they were going to be used to prove up the

3    judgments.

4              THE COURT:  Okay.

5              MR. FRAUSTO:  There are several other possible

6    witnesses that we don't anticipate calling.  The ones that we

7    actually anticipate calling will be in this order, Your Honor:

8              First witness will be Cesar Huerta from APD.

9              Second witness will be Eric Skaggs with APD.

10             Third witness will likely be Bryan Bacon with APD.

11             Denise Williams will be fit in -- somewhere in between,

12   depending on her scheduling, but we anticipate her being likely

13   the fourth witness.

14             Bailee Yates with ATF will be on -- near that time.

15             And then the last witness will actually be Task Force

16   -- well, now APD Officer Randy Mincher.

17             Royce Bushey, Nick Burns, Kristopher Koval and

18   Cole Thurman are with APD; are possible witnesses if an issue

19   arises, but at this time we likely won't call them.

20             THE COURT:  Okay.  And so by that ordering, the Court

21   should anticipate --

22             MR. FRAUSTO:  Six Government witnesses.

23             THE COURT:  -- six Government witnesses.  Okay.

24             And just based on the time it takes to seat the jury,

25   I'll try to time lunch and the two breaks to accommodate that

37

 1    anticipated order.  So if you think that we're getting close to a

 2    break -- I should have explained maybe at the outset:  We try to

 3    break for lunch, you know, around noon or 12:30.  I give jurors

 4    and counsel an hour for that.  I also try to bake into the cake a

 5    morning break and an evening break for restrooms, refreshment and

 6    otherwise.  So kind of anticipate mid-morning break for that,

 7    usually around 10:00, 10:30; lunch around noon or noonish; and

 8    then somewhere in the mid-afternoon we do another break.  So as

 9    you're ordering your witnesses and asking people to be present,

10    you can anticipate those -- that break schedule as well.  So

11    we'll plan accordingly.

12          And I don't think -- Although there are designated

13    experts, there's no *Daubert* motions or any necessary adjudication

14    of an expert status or anything of that kind.

15          Is that correct, Mr. Frausto?

16          MR. FRAUSTO:  That's correct, Your Honor.

17          THE COURT:  And is that your understanding as well,

18    Mr. Barfield?

19          MR. BARFIELD:  Yes, Your Honor.

20          THE COURT:  Okay.  So now we will do the exhibits or as

21    much of that work as possible so that we can be efficient with

22    the jury's time.  And I have prepared or, accurately, my law

23    clerks have prepared a proof chart listing the Government

24    exhibits.

25          MR. FRAUSTO:  Your Honor, for the sake of the Court's

 1    time, I have several officers outside that if we could have maybe

 2    five or ten minutes to go through the exhibits with -- Most of

 3    these exhibits were agreed to subject to authentication.

 4            MR. BARFIELD:  Right.

 5            MR. FRAUSTO:  And I think we could take care of that

 6    with the officers here and satisfy any concerns that Mr. Barfield

 7    has and maybe agree, if we could have maybe a 10- or 15-minute

 8    break.

 9            THE COURT:  Okay.  So, Mr. Barfield, do you agree if

10    the parties are allowed to confer with each other and through

11    agents for the next 15 minutes, that we might reach pre-admission

12    agreement on many of these exhibits?

13            MR. BARFIELD:  I do, Your Honor.  In the trial brief I

14    filed, if the Court would just -- I mean I'm not asking the Court

15    to refer right back to it, but essentially most of my concerns

16    about, if not all of my concerns, about admission would be

17    foundational and predicates being established.  And that's why I

18    just didn't do a blanket stipulation in whole was just because

19    it's kind of hard from a defense attorney standpoint to agree to

20    everything being stipulated without foundation.

21            THE COURT:  I understand.

22            MR. BARFIELD:  And I agree.

23            THE COURT:  And I will also note for the record:  I

24    know you were assigned to this case and have been working this

25    case a little bit later in the process than -- than is typical.

1    So I understand that you're simply discharging your duty to

2    capably and effectively represent your client.  If you're

3    satisfied, though, that in consultation with the agents and the

4    Government during this break, that things may be pre-admitted

5    and, obviously, in consultation with your client, that will speed

6    the process.

7           So I'll afford the parties a 20-minutes recess between

8    now and 11:20 to do that work.  You may use this space.  I'll

9    instruct the Courtroom Deputy to disable the microphone so that

10   there's no potential of attorney/client communications being

11   picked up on a hot mic or anything like that.

12          So consider the space yours for the next 20 minutes.

13   You may bring in any Case Agents.  I just ask that you confer

14   with the Marshals and the Court Security Officers so that

15   everybody's clear about who's coming in and coming out.

16   Otherwise, this courtroom is yours for the next 20 minutes, and

17   I'll order the microphones disabled.

18          We stand in recess until 11:25.

19          COURT SECURITY OFFICER:  All rise.

20          (Court recessed from 11:03 AM until 11:37 AM.)

21          THE COURT:  Please be seated.

22          Okay.  So we're back on the record.  I apologize for

23   arriving late.  I was just making sure that I properly counted

24   for all exhibits and any motions that are pending.

25          So it's my understanding the parties have conferred and

1    that Case Agents were available to discuss the foundation for

2    various exhibits in the Government's exhibit list.

3         Have the parties reached accord on any range of

4    exhibits that may be pre-admitted for trial purposes?

5         I will, of course, afford Defense counsel an

6    opportunity to protect the record at trial that this was subject

7    to prior agreement on foundation and that witnesses would testify

8    as to XYZ, but we can go through those now.  I think we've

9    addressed 1 through 4.

10         So let's begin with Exhibit -- Government's Exhibit 5

11    and then we can just go in order.

12         MR. FRAUSTO:  Okay.

13         THE COURT:  Mr. Frausto, did the parties reach

14    agreement on the pre-admission of Exhibit 5?

15         MR. FRAUSTO:  Yes, Your Honor.  It's my understanding

16    no objection.

17         THE COURT:  Is that correct, Mr. Barfield?

18         MR. BARFIELD:  That's correct, Judge.

19         THE COURT:  So Government's Exhibit No. 5 is

20    pre-admitted, and that may be presented and published to the jury

21    through witness testimony.

22         When we're at trial, Mr. Barfield, do you -- do you

23    want the Court to make any notation for the record and to the

24    jury that these were pre-admitted based on the agreement of

25    parties and after Defense counsel was satisfied that they had the

41

1    adequate foundation or anything else?

2              MR. BARFIELD:  I don't think -- Since we're making the

3    record here for pretrial, I don't think that's necessary for the

4    Court to have to do that.

5              THE COURT:  Okay.  All right.  Government's Exhibits 6

6    through 7, Mr. Frausto, have the parties reached agreement on

7    pre-admission of those exhibits?

8              MR. FRAUSTO:  Government's Exhibit 6 is agreed to.

9    Government Exhibit No. 7 as far as authentication is agreed to.

10   The Defense has one objection to it.

11             THE COURT:  Okay.  And do you want to take that

12   objection up now, Mr. Barfield?  Do we have the necessary

13   witnesses or exhibits present that we can prelitigate that or is

14   that something you want to do at trial?

15             MR. BARFIELD:  I think it would probably be, one,

16   foundationally.  I don't necessarily have an objection to it as

17   far as normal predicate as to, "Hey, is this what you found,"

18   et cetera.  My objection's going to be a relevance objection as

19   to this particular exhibit because, if I'm not mistaken, that's

20   an exhibit -- Exhibit 7 would be narcotics found on the person of

21   a -- not my client, and so I believe that would be a relevance

22   objection that it's not relevant.

23             And I'd also object that it's unduly prejudicial.

24   Whether the Court -- And that's my objection is it was not found

25   on my client's person, nor was it found on property that he had

1   control over, possession of, or anything like that.  So I would

2   object on relevancy grounds that that particular exhibit should

3   not be admitted because it has no connection with my client.  And

4   I don't anticipate that's the Government's stance, but that's my

5   objection there.  However, how the Court wants to handle it is

6   certainly up to you.

7           THE COURT:  Do you prefer to adjudicate that before the

8   jury or do you seek a ruling from the Court at Pretrial

9   Conference?

10          MR. BARFIELD:  I would prefer to adjudicate that in

11  front of the jury, Your Honor.

12          THE COURT:  Okay.  We can take it up at this time.  I

13  do want to preview my research of that.  There's a Fifth Circuit

14  case *Ocampo-Vergara* that explains in a conspiracy case that

15  evidence that a defendant was involved with a co-conspirator is

16  highly relevant and, accordingly, presence and association with

17  other members of the conspiracy along with other evidence may be

18  relied upon to find a conspiracy.

19          That's a direct quote from Fifth Circuit case,

20  *Ocampo-Vergara*.  And assuming that a proper foundation is laid

21  and the exhibit is authenticated, I anticipate that this will be

22  deemed admissible under Rule 1002 and under that line of Fifth

23  Circuit authority, but I will allow you to make your arguments at

24  trial, if that is your preference.

25          MR. BARFIELD:  And I do.  And I think I need to object

1    at trial just for preservation of the record as well --

2              THE COURT:  Okay.

3              MR. BARFIELD:  -- for appellate purposes, sir.

4              THE COURT:  Okay.  With that understanding, No. 7 is

5    not pre-admitted, and we'll take that up when it is presented

6    through a witness.

7              Go ahead, Mr. Frausto.

8              MR. FRAUSTO:  Government's Exhibit 8 through 15 are

9    text messages with Palmer who was in possession of the Exhibit 7.

10   It's my understanding that the Defense has the same objection as

11   to relevance and prejudicial.  The Government's standpoint is it

12   does go towards Count One of the conspiracy and is relevant

13   pertaining to Count One of the -- and Count Two for that matter

14   for constructive possession.

15             THE COURT:  Just for the Court's own trial preparation,

16   Mr. Frausto, which witness will be on the stand when Government's

17   Exhibit 7 is presented?

18             MR. FRAUSTO:  Either Eric Skaggs or Bryan Bacon, but it

19   will likely be Eric Skaggs which is the second witness.

20             THE COURT:  Okay.  And then 8 through 15?

21             MR. FRAUSTO:  8 through 15 is Cesar Huerto who is the

22   Agent, and he will be our first witness.

23             THE COURT:  Okay.  So, Mr. Barfield, it's my

24   understanding that you have similar relevancy objections, also

25   potential 801, 802 hearsay objections.  Is that correct?

 1          MR. BARFIELD:  That is correct, Your Honor.

 2          THE COURT:  Okay.  So to preview the Court's analysis

 3     of Exhibits 8 through 15, by the Court's reading, 404(b) is not

 4     applicable here.  It's the Government's understanding that

 5     they're offered to show knowledge, plan and opportunity and

 6     absence of mistake.  The Court anticipates that they are

 7     admissible.  They're also not hearsay statements under those

 8     relevant 801, 802 rules, specifically 801(d)(2)(A) as well as

 9     (d)(2)(E) which has an expressed exemption for co-conspirator

10     statements.  They also tend to prove or make evident that certain

11     elements that the Government is required to prove are true.  So

12     they're relevant -- potentially relevant for that purpose.

13          Additionally, even if they were hearsay, they would

14     qualify as hearsay exceptions under 803(3) because they reflect

15     the client's state of mind, motive, intent or plan.

16          And finally, the Court anticipates that they will not

17     be offered for the truth of the matter asserted.  So that is

18     another reason why they're not excludable as hearsay.  And

19     because of the nature of the correspondence reflected in those

20     text messages, commands, imperatives, questions and statements,

21     assertions substantially show state of mind.

22          So I anticipate that is the Court's ruling at trial,

23     but we'll see if the Agent lays the proper foundation, they're

24     authenticated, and then I'll hear your argument at trial if you

25     want to reserve the right to do that.

1          MR. BARFIELD:  Yes, sir.

2          THE COURT:  Okay.  We'll do it that way.  And I'll

3   anticipate, because it's the first witness listed, that it will

4   likely come through the testimony of Agent Huerta.

5          Okay.  Government's Exhibit 16?

6          MR. FRAUSTO:  Your Honor, 16 through 52 have no

7   objections.

8          THE COURT:  Mr. Barfield, is that your understanding as

9   well that Government's Exhibits 16 through 52 may be pre-admitted

10  without objection?

11         MR. BARFIELD:  Yes, Your Honor.

12         THE COURT:  And is this because after conferring with

13  the Government, your client and any necessary Case Agents that

14  the Government has satisfied your foundational requirements and

15  concerns that they have been authenticated and that they should

16  be admissible under the Rules of Evidence?

17         MR. BARFIELD:  That is correct, Your Honor.

18         THE COURT:  Okay.  So Government's Exhibits 16 through

19  52 are pre-admitted.  They may be referred to as such at the

20  trial, and the Court deems those admitted into evidence.  And if

21  I'm correct here, I think there's one exception to that ruling.

22  That might be 52.  I believe that's the statue.

23         MR. FRAUSTO:  Correct.

24         THE COURT:  Okay.  Mr. Barfield, no objection -- I just

25  want to make sure I have the range right.  I know these are all a

1    lot of photographs.  There's no objection to the Government's

2    submission of Exhibit 52?

3              MR. BARFIELD:  That's the statue?

4              THE COURT:  Yes, sir.

5              MR. BARFIELD:  You know, honestly, is that the Santa

6    Muerte statue?

7              THE COURT:  I believe it's often referred to by that.

8    I don't know specifically like what iconography is involved but,

9    yes.  The Court's concern here is that I typically draw

10   objections to such a photography and icons, but I wanted to make

11   certain that Defendant isn't litigating that admissibility issue.

12             MR. BARFIELD:  Well, Your Honor, I originally indicated

13   to -- in all fairness to Mr. Frausto that, but after -- you know,

14   sometimes you have further reflection.  I think I'm going to have

15   to object to that as to relevance and potential prejudice.  I

16   don't -- I don't think it has anything to do with this case, and

17   I just don't think it would be -- A juror, depending on their

18   beliefs, might be prejudiced which I don't think has relevance to

19   the State proving the elements of.  I think I'm going to have to

20   object to 52.  And I'm going to represent:  I didn't represent

21   that to Mr. Frausto earlier.  But after further reflection, I am

22   going to have to object to that.  I just don't ---

23             THE COURT:  Yes.  And, Mr. Barfield, the Court

24   understands I only gave you roughly 20 minutes to go through

25   dozens and dozens of photographs.  I know this sort of Santa

1   Muerte statuary is sometimes controversial, so I wanted to make

2   sure counsel and Court were on the same page.  I understand the

3   nature of your objection.  It's potentially prejudicial.  Its

4   probative value is outweighed potentially by any unfair

5   prejudice.  It also, you know, implicates Rules 401, 402 and 901.

6   So I'll hear the Government's argument, and I do intend to rule

7   on Exhibit 52 before trial.

8           MR. FRAUSTO:  Your Honor, Agent Mincher will testify as

9   an expert, and I anticipate his testimony will be such that he's

10  familiar with that statue.  And based on his training and

11  experience, it's common for narcotics traffickers to have a

12  statue like that and worship for safety in protecting their

13  drugs, and that is common when he's investigating narcotics

14  traffickers.  And this was no different from what he's seen in

15  the past involving narcotics traffickers.

16          THE COURT:  And understanding that the Government

17  reserves the right to elicit testimony from the relevant DEA

18  Agent based on training, education and experience, as a factual

19  matter, were any drugs recovered from the paraphernalia depicted

20  in Government Exhibit 52?

21          I know that there's a safe that it is resting upon.

22  But within the statuary and the associated relics and icons, were

23  any drugs recovered from this shrine which is a collection of

24  statuary bowls and other icons?

25          MR. FRAUSTO:  No, Your Honor.  But there is money there

1  which is common; that the Agent could testify that it's common to

2  kind of worship and put money there.  That's the same shop that

3  the evidence will come out that the Defendant was dealing out of.

4  So he was, obviously, having the Santa Muerte for protection for

5  that specific shop and his narcotics, and that's the shop he left

6  that morning of, and that's where he resided and worked at.

7          THE COURT:  Okay.  So I'll withhold judgment on the

8  admission of Government Exhibit 52.  I do have concern that the

9  probative value may be outweighed by the potential prejudice just

10 because of the imagery involved.  But if we need to take up

11 Exhibit 52 outside the presence of the jury before it's presented

12 to the witness, I'll just ask that you signal to the Court that

13 we're approaching that point.  You can receive a ruling from the

14 Court at that time.  So that will be a trial ruling on

15 Exhibit 52.

16         Okay.  So that -- I believe that brings us to 53 and

17 54.

18         MR. FRAUSTO:  There's -- There's no objection to those,

19 Your Honor.

20         THE COURT:  Okay.

21         MR. BARFIELD:  Correct.

22         THE COURT:  Is that correct, Mr. Barfield?

23         MR. BARFIELD:  That is correct, Your Honor.

24         THE COURT:  So Government's Exhibits 53 and 54 are

25 pre-admitted into evidence, may be presented and published to the

1    jury.  They are part of the evidence admitted in this case.

2        Exhibit 55?

3        MR. FRAUSTO:  So that one is not going to be admitted

4    but 55-A will be admitted, and a copy of that disk with only the

5    nine audio clips, as previously discussed, are on this disk, and

6    that has been provided to Mr. Barfield just now.  I also have an

7    extra copy for the Court.

8        THE COURT:  Okay.  Mr. Barfield, we've already

9    discussed Government's Exhibit 55.  Now that it has been

10   resubmitted as discussed as Exhibit 55-A, removing the second

11   audio clip, has that resolved any objections you would have to

12   what has now been remarked Government's Exhibit 55-A?

13       MR. BARFIELD:  Again, Your Honor, I don't anticipate

14   that being an issue, but, yes, that does resolve those issues.

15       THE COURT:  Okay.  So here, the Court does find the

16   Government Exhibit 55-A, as modified to omit the second audio

17   clip referencing certain prior felon status and convictions, is

18   admitted as Exhibit 55-A.  And at all times I've instructed the

19   Government and Defense counsel to ensure that 55-A omits the

20   second audio clip.  So Exhibit 55-A is pre-admitted.  It may be

21   presented and published, and as modified, any objections to

22   Exhibit 55-A are overruled.  The Court finds that it's admissible

23   under various rules, specifically 901(b)(1), 901(b)(5).

24       Now Government's Exhibits 56 through 57, I think, can

25   be grouped.

1          Mr. Frausto, I believe you have already elected to omit

2     Government's Exhibit 57.  Is that correct?

3          MR. FRAUSTO:  At this time, yes, Your Honor.

4          THE COURT:  And what about Government Exhibit 56?

5          MR. FRAUSTO:  No.  56 through 65 are transcripts of

6     what's on 55-A.  So we -- There's no objection to those, outside

7     of 57 we're not admitting.

8          THE COURT:  Okay.  Now that the Government has

9     withdrawn Government Exhibit 57, the Court deems it not part of

10    this evidence sequence.

11          Does Defendant have any objections to the pre-admission

12    of Government's Exhibits 56 through 65?

13          MR. BARFIELD:  No, Your Honor.

14          THE COURT:  Am I correct about that range, 56 through

15    65?

16          MR. FRAUSTO:  Yes, Your Honor.

17          THE COURT:  Okay.  Government's Exhibits 56 through 65

18    are pre-admitted.  They may be presented, published.  They will

19    go to the jury with the exception of Government's Exhibit 57

20    which has been withdrawn, and the Court deems that out of

21    evidence.

22          Now I believe we are to Government's Exhibit 66, and

23    this is the stipulation.  Is that correct?  That that has already

24    been addressed and admitted by agreement of counsel?

25          MR. FRAUSTO:  That's correct, Your Honor.

1          THE COURT:  Is that your understanding as well,

2    Mr. Barfield?

3          MR. BARFIELD:  Yes, Your Honor.

4          THE COURT:  Government Exhibit 66, the stipulation, is

5    admitted as part of the evidence to be presented, published and

6    sent to the jury.

7          And Government's Exhibit 67 which, I believe, is an

8    audio interview.  Is that correct, Mr. Frausto?

9          MR. FRAUSTO:  Yes, Your Honor.  That's the complete

10   interview that was conducted on the Defendant on April 28th,

11   2020.  At this time, as stated in our trial brief, we don't

12   anticipate entering it or pre-admitting it.  We just have it

13   listed in the event something comes up at trial.

14         THE COURT:  Okay.  It's almost like a rule of

15   completion point.  Although it's been excerpted in other

16   exhibits, this is the complete volume, should it prove necessary.

17         MR. FRAUSTO:  That's correct, Your Honor.

18         THE COURT:  Okay.  With that understanding, any

19   objections to the Government holding it in reserve?  And then we

20   can adjudicate it if it needs to be presented or exhibited,

21   submitted as an exhibit.

22         MR. BARFIELD:  No objection.

23         THE COURT:  Okay, no objection to that use.  Okay.  If

24   at any time we need to play portions of Government Exhibit 67,

25   we'll just take up how that can be cabined to particular

1    recordings.  We'll probably do that outside the presence of the

2    jury, if that's necessary, so that they're not listening to two

3    hours of audio.  So I'll just instruct the parties to coordinate

4    closely together if they anticipate at any point Government

5    Exhibit 67 needs to be used.  And I'll ask that it be reduced to

6    start/stop excerpt time marks.

7            Okay.  Government's Exhibit 68, may it be pre-admitted

8    into evidence?

9            MR. FRAUSTO:  Yes, Your Honor.  No objection on that

10   one.

11           THE COURT:  Is that correct, Mr. Barfield?

12           MR. BARFIELD:  That is correct.

13           THE COURT:  All right.  I thank the parties, the agents

14   and counsel for being available to prelitigate those issues.

15   That will certainly speed the time at trial.

16           Are there any additional exhibits that can be

17   prelitigated -- pre-adjudicated?

18           I think I now have an inventory of those that have to

19   be addressed at trial.  Are there any other exhibits that we can

20   take up at the Pretrial Conference?  Mr. Frausto?

21           MR. FRAUSTO:  I think that clears everything up,

22   Your Honor.  The Defense had similar exhibits as we did.  So I

23   don't think there's any additional exhibits that they had that we

24   did not cover.

25           THE COURT:  Okay.  And, Mr. Barfield, understanding

1    that you're not the movant in this case, are there any other

2    exhibits that you would submit that are marked as Defendant

3    exhibits or that weren't addressed when we went through the

4    Government's list?

5            MR. BARFIELD:  No, Your Honor.

6            THE COURT:  Okay.  Now I believe that brings us down to

7    technology and what I anticipate will be presented to the jury

8    and then what will go to jury deliberations.

9            So you are allowed to use all courtroom technology.  It

10   will be at your disposal.  We will have an IT Specialist

11   available Monday and through trial.  You may pull forward the

12   large screen television for projection of any exhibits, playing

13   of any audio.  I just ask that you coordinate with each other so

14   that both attorneys can see what's being displayed.  We don't yet

15   have television displays in the jury box.  We'll have that with

16   the next court upgrade.  You may also use the Elmo.  So if you

17   have documentary evidence or any hard copies or papers, you may

18   put those on the Elmo.  They will project onto the screen.

19           At all times I will have inventory of any projection on

20   my monitor as well as my Courtroom Deputy and law clerk.  So if

21   at any moment any of those are not matching what you intend to

22   present to the jury or to a witness, please let us know.  We'll

23   have IT intervene at that point.

24           I'll just admonish the parties to go back through audio

25   so that we're playing excerpts that are agreed to and that this

1    is crystallized down to only those audio files that have been

2    pre-admitted and that you provide my staff with start and stop

3    times if we need to operate the machinery at any point.  So it

4    will be helpful to my staff and IT Support if we know start and

5    stop times for exhibits.  So if there are audio files that need

6    to be played, started and stopped, I just ask that you give us

7    advanced notice.  Do that on Monday when you walk through the

8    technology.  If you know you're going to be playing clips, just

9    let the CRD and IT Support know.  That way if we need to step in

10   at any point to get the audio up and running, we have a

11   pre-approved list of start and stop times.

12           So I anticipate kind of the following order for trial,

13   and I'm giving you this so that you can make the necessary

14   preparations to have witnesses available so there's no delay for

15   reasons of travel:

16           Day 1:  I anticipate voir dire to take most of the

17   morning.  We will have a brief morning break there and then the

18   Government to begin its case that day.

19           When the Government rests, we'll take up the standard

20   motions practice under Rule 29(a), Rule 33, and Rule 34, if

21   necessary.

22           Mr. Barfield, I'll allow you to do that at that break

23   point, outside the presence of the jury.  We can do any mid-trial

24   motions practice at that point.

25           I will excuse the jury at the close of the day, but

1    I'll ask that the attorneys and the agents be available for at

2    least 30 minutes thereafter to do any housekeeping for the next

3    day.

4         We'll start Day 2 at 9:00.  I anticipate the Government

5    will complete its case, if it's not already done.  Defendant will

6    present at that point.

7         And if you do know by Monday or Tuesday, Mr. Barfield,

8    your order on opening and close, you can give us a heads up and

9    we can make time breaks and accommodations for that.

10        I anticipate giving roughly 20, 25 minutes up to 35, 45

11   minutes for closing.  Do the parties have a requested time for

12   closing?

13        MR. FRAUSTO:  Not at this time, Your Honor, but I think

14   30, 35 minutes is plenty, and we'll likely give time back.

15        THE COURT:  Okay.  And from the Defense?

16        MR. BARFIELD:  I would -- I would agree, Your Honor,

17   with that timeframe.

18        THE COURT:  Okay.  So that will then take us to the

19   jury charge.  Have the parties collaborated to reach agreement on

20   a proposed jury charge submitted to the Court?

21        MR. FRAUSTO:  Yes, Your Honor, we did file one, and

22   that was the agreed charge.

23        THE COURT:  Okay.  So let me make sure that everybody's

24   working from the same copy, and then we can just go line by line

25   and make sure that there are no final edits or revisions to that.

1          I am printing my copy now, so I apologize for the

2     delay.

3          While I'm printing my copy, I do want to inquire about

4     counsel's preference for the jury having copies while the Court

5     reads the charge or whether we hold those copies so that nobody's

6     distracted.  I know different trial attorneys have different

7     philosophies about that.

8          Do the parties have an agreement on whether they want

9     the Court to read the charge, then distribute copies or vice

10    versa?  Mr. Frausto?

11         MR. FRAUSTO:  It doesn't matter to me, Your Honor.

12    I've seen this Court do it both ways.  And I prefer the charge

13    read and then go into closing arguments so they're aware of the

14    charge, and then they can read it along with the Court and then

15    put it down once we do our arguments.  But if Mr. Barfield feels

16    a different way, ---

17         THE COURT:  Mr. Barfield, does your client -- With his

18    constitutional rights in the cue, I'm inclined to defer to

19    Defense counsel.  Do you have a particular preference on

20    distributing copies before or after the reading of the charge?

21         MR. BARFIELD:  I prefer after, Judge.

22         THE COURT:  Okay.

23         MR. BARFIELD:  I think that when you hand -- And this

24    is why.  I think when you hand the copies to the jury, they get

25    preoccupied and aren't listening to what the Court's saying.

1          THE COURT:  Okay.  It sounds like the parties can --

2     agreed on that point.  We will read the charge and then

3     distribute copies only after that's done.

4          Now as my Courtroom Deputy collects that copy, let's go

5     over kind of the rules of the road for jury deliberation.  I

6     don't intend to identify the alternatives.  They'll simply -- or

7     I'm sorry; the alternates.  They'll simply sit with the jury

8     throughout the trial.  They won't be dismissed until jury

9     deliberations begin.  I'll excuse them, assuming that we don't

10    have any substitutions due to illness or otherwise.

11         Any questions that are submitted from the jury have to

12    go through the CSO and the CRD before they reach me.  So you will

13    not receive those questions unless I anticipate that I need

14    argument from counsel.  So the way that process works in this

15    court is they submit handwritten questions to the CSO who then

16    passes that to the Courtroom Deputy and then to me.  I will only

17    ask that counsel return to address the question if I think

18    argument is needed.  Otherwise, if it's just a point of law that

19    the Court can address without counsel, we'll do it that way.

20         Now it's my intention with audio/video that that will

21    be sent to the jury in the excerpted form, and that anything that

22    is reduced to audio or video will be available to the jury and

23    with approved courtroom technology; usually a laptop that's in

24    the jury deliberation room.

25         Any objections to that process or any security concerns

1    or otherwise?

2         MR. FRAUSTO:  Not from the Government, Your Honor.

3         THE COURT:  Okay.

4         MR. BARFIELD:  No, Your Honor.

5         THE COURT:  Okay.  Sometimes in national security cases

6    that -- that's an issue about how that stuff moves around the

7    building.  But, here, I think, we've worked hard to agree to the

8    audio/video and the excerpts, and those will be provided to the

9    jury.  And then my IT staff will be responsible for providing the

10   AV equipment and laptop.

11        All right.  So I have the "Agreed Proposed Jury

12   Charge."  Mr. Frausto, it's your understanding that the

13   Government has agreed to what has been marked "Agreed Proposed

14   Jury Charge"?

15        MR. FRAUSTO:  Everything's agreed to, Your Honor.  The

16   only two pages that may need to be changed prior to being

17   submitted is on Page 9.  At the very bottom, we put in this case

18   there are two transcripts because there's a difference of

19   opinion.  There actually wasn't two transcripts.  It's only our

20   transcripts that had been prepared and provided.  So we could

21   technically take out that bottom portion.

22        MR. BARFIELD:  Agreed, Your Honor.

23        THE COURT:  Are you on the same page with us,

24   Mr. Barfield?  Page 9 of the "Agreed Proposed Charge" at the very

25   bottom, there is an italics and bolded section that represents a

1    parenthetical that may be inserted.  May I strike that now as not

2    at issue in this case?

3        MR. BARFIELD:  You may, Your Honor.

4        THE COURT:  Okay.  So when this charge comes back to

5    the parties, it will not include that optional language.

6        Okay.  And I believe you mentioned that there's a

7    second insert that we can address.

8        MR. FRAUSTO:  Page 18, again, it's with the

9    understanding that it's completely up to the Defendant to testify

10   or not testify and make that decision at any time he wants.

11   Assuming that he does not testify, at Page 18, 1.12 could be

12   eliminated.

13       THE COURT:  Okay.  Mr. Barfield, I will leave this in

14   the agreed charge, consider it optional only if you call your

15   client to the stand and we begin to deliberate this prior felon

16   status issue that's been the source of a lot of litigation

17   already.  So with that understanding, may we leave that in the

18   agreed charge until we get to trial?

19       MR. BARFIELD:  Absolutely.  I do believe that's a trial

20   decision.

21       THE COURT:  Okay.

22       MR. BARFIELD:  And so, yes, I think we leave it in.

23   And if my client doesn't testify, which is actually what I

24   anticipate but you never know, then we can strike it.

25       THE COURT:  Okay.  So I -- I frequently prelitigate the

1    charge conference at the Pretrial Conference, but because there's

2    been so much agreement among the parties and the parties have

3    worked diligently to use Fifth Circuit Patterns on a page-by-page

4    basis, I'm not going to do that at this Pretrial Conference.  If

5    at any time you anticipate that the evidence or witnesses called

6    might reflect a need to change the charge, we can do that during

7    morning housekeeping on any of the trial days.  So if at any

8    point we need to do work to the charge, I'll just ask that we

9    prelitigate that, that you notice the Court and clerks so that we

10   can have that ready to go.  I don't like leaving a jury waiting

11   too long if we can get the charge ironed out before such time.

12   So if at any moment you identify additional problems with this

13   agreed charge, we can take it up during housekeeping or at any

14   point in trial, during a break or otherwise.  So I just ask the

15   parties to continue to work diligently together on the charge.

16        And I believe that just leaves forfeiture.  I know that

17   we've got guns involved in this case.  I did not see any

18   Preliminary Notices of Forfeiture or any other forfeiture

19   documents on file.

20        Mr. Frausto, how does the Government seek to proceed on

21   forfeiture?

22        MR. FRAUSTO:  Your Honor, we will either do a separate

23   proceeding if the Defendant doesn't want to forfeit, but we'll

24   likely reach an agreement, depending on the verdict, Your Honor,

25   but we're not going to have a forfeiture attorney here present.

1          THE COURT:  Okay.  Now this represents a difference

2     between the Dallas and Fort Worth Divisions and the West Texas

3     Divisions.  We don't have at our disposal in this area separate

4     forfeiture attorneys and sections.  So they're often not present

5     and available.  So I'll anticipate if judicial forfeiture is

6     sought at -- at the day of trial, that we may have to take that

7     up separately, but I won't plan on having an asset forfeiture

8     attorney or a forfeiture attorney present for the proceeding.

9     And this is, of course, without prejudice to the Government

10    seeking administrative forfeiture or other remedies, but I won't

11    plan on having that AUSA in the building that day.

12          MR. FRAUSTO:  Thank you, Your Honor.

13          THE COURT:  Okay.  And is there any other order,

14    pending motion or housekeeping that we can do to streamline and

15    speed the anticipated trial on Tuesday?

16          MR. FRAUSTO:  Your Honor, I just want to put on the

17    record, if the time is appropriate, the plea offer that was

18    extended, the most -- one of the most recent plea offers that was

19    extended to the Defendant and his declination of that offer.

20          THE COURT:  Okay.  Before you do that, I do want to

21    explain to the Defendant:  Under various Rules of Evidence and

22    legal principles, Plea Agreements are inadmissible as evidence.

23    These are never presented to the jury.  It's not part of the

24    case-in-chief.  But right now, I've been advised that the parties

25    are making a record of various Plea Agreements for potential

1    appellate purposes.  And I will afford wide latitude to the AUSA

2    and also Defense counsel to explain the Plea Agreement history so

3    that it is made part of the record in this case and any record on

4    appeal, but this is not for purposes of evidence, and it will not

5    be submitted as evidence.  You may proceed.

6         MR. FRAUSTO:  Your Honor, this is a three-count

7    indictment.  The week of -- The second week of July, I think it

8    was July 12th, the Defendant had a hearing in magistrate court.

9    At that time the Defendant was representing himself.  However,

10   stand-by counsel, Brooks Barfield, at the time was with him and

11   we took a pause.  I submitted an offer to the Defendant that he

12   plead to Count Three with a maximum and then the Government would

13   dismiss the remaining counts; in addition, foregoing any other

14   charges that they sought relevant related to this case on his

15   arrest related to this case.

16        Specifically, there was a firearm that was located in

17   his possession on the second arrest once he was reindicted, and

18   the Government agreed not to pursue any charges related to that

19   gun or any ammunition.

20        So essentially the offer was:  Plead to Count Three in

21   lieu of any additional charges related to this case with a

22   maximum penalty of ten years' imprisonment.

23        And July 14th was the deadline of that offer.  Our

24   office was notified by Mr. Barfield that he did discuss with his

25   client the ten-year offer or the ten-year cap essentially on the

 1    gun charge in Count Three, and his client has declined that offer

 2    and wants to proceed to trial.

 3           THE COURT:  Okay.  Mr. Barfield, I'll allow you now to

 4    respond in kind with any additional detail you think necessary

 5    for appellate purposes and any record you need to make regarding

 6    the plea negotiations up to this point in this case.

 7           MR. BARFIELD:  Your Honor, that is correct.  I was

 8    present at the hearing.  Originally, just basic background -- I

 9    won't belabor it -- I was appointed stand-by counsel by

10    Magistrate Judge Reno.  Subsequently during the proceedings, we

11    had a hearing.  And after that hearing on the second floor of

12    this courtroom in magistrate court, Mr. Frausto, myself and

13    Mr. Carrasco did meet in the courtroom where Mr. Frausto related

14    the offer that he correctly stated to the Court.  I had -- I have

15    had subsequent conversations with my client in person regarding

16    that offer, and my client has advised me that -- During the

17    meeting where we were talking about that, he advised me that he

18    wanted me to take over representation of the case and signed a

19    document to that effect which we have not filed with the Court

20    because I don't think that's necessary.  However, during that, he

21    also indicated he did not want to accept the ten-year cap and

22    plead to Count Three.  So that is exactly correct.

23           THE COURT:  Okay.  I was just refreshing my

24    recollection of the Magistrate Judge's work up to this point.  So

25    this is when you began to serve as counsel for purposes of any

1  plea negotiations.

2          MR. BARFIELD:  That is correct, Your Honor.

3          THE COURT:  Okay, understood.  You may proceed.

4          MR. BARFIELD:  And -- And I subsequently had subsequent

5  conversations with -- in fact, with Mr. Frausto regarding Plea

6  Agreements.  We had a deadline, I believe.  It was the 26th

7  pursuant to the Court's Scheduling Order.  Mr. Frausto did

8  indicate to me that the ten-year offer had, indeed, expired.

9  However, he did indicate, however, that he would keep open any

10 plea offer up to a 20-year cap on one of the other charged

11 counts.  I submitted that to my client.  My client also rejected

12 that plea offer as well.  Mr. Frausto was not physically present

13 when that was presented to Mr. Carrasco.  So I guess in a

14 nutshell, there's been two plea offers made to my client, a

15 10-year cap and a 20-year cap, and both of those offers have been

16 rejected by Mr. Carrasco.

17         THE COURT:  Okay.  Thank you, Mr. Barfield.

18         That's consistent with the Court's understanding of the

19 various substitutions of counsel, the Motions to Withdraw that

20 led us to this point, and the Court only recited that history for

21 purposes of preserving any appellate issues that might obtain.

22         I did have one note on a/k/a.  So here the Indictment

23 reflects an a/k/a of "Chato" or "Chato."  I'm just going to ask

24 that you make that part of the glossary of terms that you submit

25 to the court reporter.  I anticipate various agents may testify

1    to that nickname.  Just make certain that the court reporter has

2    that.  It's reflected in the Indictment.  It's on the face of the

3    Indictment.  So add the nickname to your list of terms that the

4    court reporter needs before trial begins.

5          MR. FRAUSTO:  Your Honor, we submitted that glossary to

6    the court reporter and Victoria yesterday, and it did include

7    that nickname.

8          THE COURT:  Okay, perfect.  All right.  I believe with

9    that, we're ready to start trial on Tuesday.  Are there any other

10   housekeeping matters that we can take up?

11         MR. FRAUSTO:  None from the Government.

12         MR. BARFIELD:  Your Honor, I just wanted to confirm.  I

13   did -- And the reason I'm confirming that is I'm the one that

14   personally e-mailed.  I do believe I did e-mail the Court last

15   week, pursuant to the Scheduling Order, proposed voir dire

16   questions from Defense to the Court's e-mail.  Earlier the Court

17   had mentioned that he -- he had seen the Government's proposed

18   voir dire questions.  I just want to confirm that the Court

19   received those.  If for some reason there's an issue with that, I

20   have -- I believe I've got it timely to you, but I'm the one who

21   personally e-mailed it, not my legal assistant.  So if for some

22   reason there is an issue with that, if the Court would advise, I

23   can re-e-mail that to the Court because I did that personally,

24   and ---

25         MR. FRAUSTO:  Your Honor, we did receive it via e-mail.

 1   It wasn't filed but it was submitted on an e-mail to Kacsmaryk

 2   Orders and I was copied, and I have a copy of it.

 3           THE COURT:  Okay.  Sometimes there's a confusion

 4   between the NDTX portal and then any other e-mails for my

 5   Courtroom Deputy.  I'll instruct counsel to stay maybe five more

 6   minutes after we're in recess to make sure that my Courtroom

 7   Deputy and law clerk have a copy.

 8           MR. BARFIELD:  Understood.

 9           THE COURT:  Thus far, I'm -- I'm receiving head nods

10   that we don't have that copy, but I do intend to integrate those

11   into questions from the bench.

12           MR. BARFIELD:  Okay.

13           THE COURT:  We can go over those on the day of trial.

14   If I see problems with any proposed questions, we can take that

15   up as housekeeping, but I don't anticipate any problem in asking

16   standard questions that come from the Defense bar.

17           MR. BARFIELD:  Yeah.  And I don't -- There's nothing

18   out -- There's nothing -- I'm just going to represent:  There's

19   nothing in my -- Some of them are very similar to the

20   Government's, and I don't anticipate anything that's out of the

21   ordinary with my questions.

22           THE COURT:  Okay.  And just with the admonishment that

23   you're familiar with that I don't allow attorneys to pretry their

24   case to the venire panel  So as long as it doesn't reflect any

25   efforts to do that, I'm sure I can integrate those into the

1    questions that come from the bench.

2          Any additional housekeeping, Mr. Barfield?

3          MR. BARFIELD:  No, Your Honor.

4          THE COURT:  Okay.  With that, I'll instruct counsel

5    just to hang around for five minutes to get any materials that

6    need to be submitted to the Courtroom Deputy or IT Support staff.

7          We are dismissed, and this Court stands in recess for

8    the remainder of the day.

9          COURT SECURITY OFFICER:  All rise.

10          (Hearing adjourned at 12:21 PM.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATE OF OFFICIAL REPORTER</u>


I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 30th day of January, 2023.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER